Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF JAROMIR PROKOP | CASE NO.    MJ20-154<br><br>COMPLAINT FOR PROVISIONAL ARREST WITH VIEW TOWARDS EXTRADITION (8 U.S.C. § 3184) |

BEFORE, the Honorable Brian A. Tsuchida, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.      In this matter, I represent the United States in fulfilling its treaty obligation to the Czech Republic.

2.      There is an extradition treaty in force between the United States and the Czech Republic, Treaty Between the United States and Czechoslovakia for the Extradition of Fugitives from Justice, U.S.-Czech, July 2, 1925, 44 Stat. 2367; Supplementary Extradition Treaty Between the United States of America and Czechoslovakia, U.S.-Czech, Apr. 29, 1935, 49 Stat. 3253; Second Supplementary Treaty

COMPLAINT FOR EXTRADITION / PROKOP - 1

on Extradition Between the United States of American and the Czech Republic, U.S.-Czech., May 16, 2006, S. TREATY DOC. NO. 109-14 (2006) (collectively referenced hereafter as the "Treaty").

3.     The Treaty provides in Article XI for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4.     In accordance with Article XI of the Treaty, the Government of the Czech Republic has asked the United States for the provisional arrest of JAROMIR PROKOP ("PROKOP") with a view towards his extradition.

5.     According to the information provided by the Government of the Czech Republic, PROKOP was convicted of two counts of robbery in complicity in violation of Section 9, Subsection 2, and Section 234, Subsections 1, 2(a)-(b) of the Penal Code of the Czech Republic (Counts 2 & 4); one count of robbery in complicity in violation of Section 9, Subsection 2, and Section 234, Subsection 1, 2(a) of the Penal Code of the Czech Republic (Count 1); and one count of attempted robbery in complicity in violation of Section 8, Subsection 1, Section 9, Subsection 2, and Section 234, Subsections 1, 3 of the Penal Code of the Czech Republic (Count 3).  He was sentenced, after appeal, to a term of imprisonment of 13 years and 6 months.

6.     These offenses were committed within the jurisdiction of the Czech Republic.  A warrant for PROKOP's arrest was issued on January 13, 2020, by Presiding Judge Mgr. Jiři Wažik in the Regional Court in Prague, Czech Republic.

7.     The warrant was issued on the basis of the following facts:

a.     <u>Count One</u>:   On November 6, 1996, an organized crime group, acting under the direction of PROKOP and Michal Puchar, kidnapped Vaclav Toman from the parking garage of his home in Prague, Czech Republic.  The victim was the Chairman of the Czech Goldsmiths' Union.  According to numerous witness statements, as well as the testimony of PROKOP's co-defendants in the pre-trial investigation and during trial, wherein they admitted their involvement in the crime, PROKOP and Michal Purchar

COMPLAINT FOR EXTRADITION / PROKOP - 2

1   contacted David Berdych, Radek Trumpeš, and Josef Korbela to arrange the kidnapping

2   of the victim in exchange for an unspecified reward.  PROKOP told them, as well as

3   other co-conspirators, that the victim owed him and Puchar CZK 300,000 from a

4   previously uncompensated sale of multi-kilograms of gold to the victim.  The co-

5   defendants testified that PROKOP provided them with information on the type of car that

6   the victim drove, where he lived, and his usual route home from work.  PROKOP had

7   arranged with the co-defendants that after kidnapping the victim, they were to take him to

8   PROKOP's cottage, where he and Puchar were to settle with him for their previous

9   trading in gold.  The co-defendants testified that PROKOP directed them to park near the

10  victim's home, between 5:15 and 5:30 p.m.  As soon as Vaclav Toman drove into his

11  garage on November 6, 1996, three co-defendants ran into the garage before the door

12  closed.  Once in the garage, the co-defendants removed the victim from the driver's side

13  of the car, handcuffed him, and forced him into the rear seat of his car.  According to

14  Radek Trumpeš and Josef Korbela, Korbela poured a clear liquid, given to him by

15  PROKOP, onto a handkerchief and held it to the victim's mouth which caused the victim

16  to lose consciousness.  Berdych testified that, by prior agreement with PROKOP, he

17  removed a suitcase from the garage belonging to the victim, left the garage with the

18  suitcase, and called PROKOP to get instructions as to where to meet him with the

19  suitcase.  It was later determined that the suitcase contained approximately CZK 20,000,

20  credit cards, and other items.  Berdych stated that he and PROKOP agreed to meet at the

21  Budějovická metro station where the suitcase and the remote control to the victim's

22  garage were given to PROKOP.  PROKOP subsequently called this co-defendant at 7:30

23  p.m. and directed him to come to his (PROKOP's) cottage where the group had

24  previously arranged to bring the victim.  Upon his arrival, Berdych stated that the co-

25  defendants were all present at the cottage and that Berdych was told that the victim was

26  dead.  Several co-defendants subsequently disposed of the victim's body, and it was

27  found in a wooded area near Prague four days later.  According to medical reports,

28

COMPLAINT FOR EXTRADITION / PROKOP - 3

1  Toman was physically beaten and ultimately died from asphyxiation and severe injuries
2  to his chest and neck.

3      b.    Count Two:   On November 26, 1995, at approximately 5:00 p.m., co-
4  defendants David Berdych, Radek Trumpeš and Josef Korbela held up the OBI Store in
5  Prague, Czech Republic.  According to the co-defendants and a cooperating source,
6  PROKOP told them that there were several days receipts in the store, one cashier, and
7  that the security guard, who was unarmed, would answer the door when they knocked.
8  When Korbela and Trumpeš entered the store carrying firearms, they tied up the two
9  security guards and injected them with benzodiazepam.  PROKOP had previously given
10 them the tranquilizer to use during the robbery.  Berdych and Trumpeš held the cashier at
11 gunpoint, made her give them the key to the safe, and injected her with benzodiazepam.
12 Berdych put the cash and coins from the safe into a gym bag which totaled CZK
13 2,719,000.  Berdych, Trumpeš and Korbela fled the store with the cash, which they then
14 gave to PROKOP and Puchar, who were waiting in a car near the store.  According to
15 Berdych and Trumpeš, they were each given CZK 250,000.  Korbela testified that he
16 received CZK 180,000 from PROKOP.

17     c.    Count Three: By prior agreement among PROKOP, Michal Puchar, David
18 Berdych, Radek Trumpeš and Josef Korbela, on March 3, 1996, Trumpeš, Berdych, and
19 Korbela kidnapped Pavel Kokrment, one of PROKOP's business associates.  According
20 to the victim, as he got out of his car at his residence, three people who were wearing
21 police uniforms approached him, shouting that they were police officers.  They hit him in
22 the face with a baseball bat, breaking his nose, and pushed him into a green Škoda
23 Favorit vehicle.  They then placed a balaclava over his head.  The victim testified that
24 there were three other people in the vehicle.  The victim was subsequently placed in a
25 room where his assailants demanded CZK 10,000,000 from him.  The victim gave them
26 the key to his safe deposit box and the code as well as the key to his apartment.  The
27 assailants removed CZK 350,000 from the safe deposit box.  The victim stated that he did
28 not have any more money and needed to contact a friend to get more money.  The victim

COMPLAINT FOR EXTRADITION / PROKOP - 4

1   arranged with a friend to give the assailants CZK 2,000,000.  Near mid-day, the victim's
2   friend notified the victim that he had obtained the money; it was agreed that the money
3   would be handed over at 2:00 p.m.  The victim was placed in the trunk of a car.  When
4   the car arrived at its destination, the victim stated that he was given the keys to the
5   handcuffs that had been placed on him and was told where he could find the key to the
6   car.  He was also warned not to talk to the police.  According to the victim, he had met
7   with PROKOP approximately 20 minutes before the kidnapping, and had met with him
8   frequently, but it did not occur to him that PROKOP was involved in the kidnapping and
9   assault.  It was PROKOP who had recommended to the victim to set up a safe-deposit
10  box.  Berdych, Trumpeš and Korbela subsequently confessed to participating in the crime
11  and implicated PROKOP and Puchar.

12          d.      Count Four:  On August 29, 1996, Trumpeš and Korbela held up Miroslav
13  Mãrik, who was working as a driver for a European company based in Prague.  Miroslav
14  Mãrik's job was to obtain tobacco products from the Phillip Morris warehouse near the
15  premises of the K + K company.  According to the victim, he normally carried money
16  with him in a black suitcase.  On the day of the crime, the victim testified that he had
17  approximately CZK 800,000 in banknotes of various denominations.  When he passed
18  through the gate of the K + K company, a brown passenger car blocked his van.  A man
19  with a black balaclava over his head ran out of the car carrying a gun and called for the
20  victim to give him the suitcase and get out of the van.  When the victim got out of the
21  van, another person wearing a black balaclava and a police uniform took him by his
22  shoulder and told him to lie on the ground with his hands behind him.  The victim was
23  then handcuffed to his vehicle.  According to testimony provided by Korbela, Trumpeš
24  then took the victim's suitcase from his van and got into a car driven by PROKOP and
25  left together.  Korbela got into a car with Puchar and left.  Subsequently, all four co-
26  conspirators met and PROKOP and Puchar took the suitcase.  Korbela testified that he
27  received CZK 90,000 from the robbery.  Trumpeš also admitted that he pointed a gun at
28  the victim during the robbery and that it was PROKOP who gave him the gun

COMPLAINT FOR EXTRADITION / PROKOP - 5

8.    The offenses for which PROKOP was charged and convicted are provided for in Article II of the Treaty.

9.    PROKOP may be found within the jurisdiction of this Court.  On January 13, 2020, Prokop was caught on a security camera entering a UPS store in Tacoma, Washington, where he has a P.O. Box under one of his known aliases "Krzystof Buliasz."

10.    A formal request for extradition from the Government of the Czech Republic, supported by the documents specified in the Treaty, will be submitted within the time required under the Treaty.

11.    PROKOP would likely flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and the Czech Republic, and that this complaint and the warrant be placed under the seal of the Court, except as disclosure is needed for its execution, until such time as the warrant is executed.


*/s/ C. Andrew Colasurdo*
C. ANDREW COLASURDO
Assistant United States Attorney


The above-named Assistant United States Attorney provided a sworn statement attesting to the truth of the contents of the foregoing Complaint by telephone on this 3rd day of April, 2020.  Based on the Complaint and the sworn statement, the Court hereby finds that there is probable cause to believe that JAROMIR PROKOP should be apprehended, arrested and brought before this Court, in order that the evidence of criminality may be heard and considered as provided in Title 18, United States Code,

COMPLAINT FOR EXTRADITION / PROKOP - 6

Section 3184, and in the extradition Treaty between the United States and the Czech Republic.

This Complaint and any corresponding arrest warrant shall remain sealed until the arrest of JAROMIR PROKOP, or further order of the Court.

Dated this 3rd day of April, 2020.


_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

COMPLAINT FOR EXTRADITION / PROKOP - 7